THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* DIÓMEDES DOMENECH MELÉNDEZ, Defendant and Appellant.

No. CR-68-214. Decided November 20, 1969.

*Samuel Maduro Classen* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

PER CURIAM: The prosecuting attorney filed an information against Cristóbal Zayas Laureano and Diómedes Domenech Meléndez for the offense of grand larceny, committed on October 28, 1967, in San Juan, Puerto Rico, when "acting in common and mutual agreement, unlawfully, wilfully, maliciously, with the criminal intent to commit, as in effect they committed, larceny and to deprive the owner permanently of his legitimate property, they took from the person of Jorge Rivera Oyola, a watch valued at $150 belonging to and property of said Jorge Rivera Oyola."

The jury found appellant guilty of said offense and he was sentenced to serve from two to five years in the penitentiary. Feeling aggrieved, he appealed assigning the commission of several errors.

In the first error the nullity of the verdict is alleged because it was not unanimously rendered. This contention has

been decided against appellant in *People* v. *Maldonado Dipiní*, 96 P.R.R. 874 (1969).

■ Moreover, the trial of this case having been held on February 13, 1968, such defense is not available for appellant. *People* v. *Delgado Lafuente*, 97 P.R.R. 260 (1969).

■ In the second error it is maintained that the trial court should have instructed the jury about the necessity that the property taken from the person must have some value even though small, and about what should constitute a personal property or the definition of "property".

The evidence established that the property stolen had some value at the time of the larceny, since the prejudiced party testified that the watch had cost him $150. The judge charged the jury that even though they reached the determination that the value of the watch was less than $100, it would still be grand larceny because it had been taken from the person. See, *People* v. *Ortiz*, 76 P.R.R. 231 (1954). The judge also charged that a watch is a personal property and that it is, therefore, included in the term "personal property" used in the definition of the offense in § 426 of the Penal Code. From the instructions as a whole it is inferred that the judge spoke on several occasions in his instructions about the value of the stolen property. Aside from what has been said appellant did not challenge the instructions transmitted nor requested clarification thereof. *People* v. *Delgado Lafuente, supra; People* v. *Iturrino de Jesús*, 90 P.R.R. 687 (1964).

■ The third error was not committed either. The uncontroverted evidence showed that the watch was taken from the person. The instructions about petit larceny did not lie. Instructions about a misdemeanor only lie when the evidence justifies it. *People* v. *Pantoja Aguayo*, 97 P.R.R. 230 (1969); *People* v. *Gagot Mangual*, 96 P.R.R. 611 (1968); *People* v. *Fuentes Rivera*, judgment of March 6, 1969.

The court did not err, as appellant maintains in his fourth assignment of error, "in not instructing the jury about what should be understood by principals and coauthors, and acting in common and mutual agreement, and the elements that should be present."

■ Section 36 of the Penal Code, in its English text, which is the one that should prevail, *People* v. *Zayas*, 72 P.R.R. 17 (1951), considers also as coauthor the one who aids or abets in the commission of a crime. So that, it is not correct to state, as appellant does, that principals are only those who commit the crime directly and those who, not being present, would have advised its commission.

The fifth error is untenable.

The judge instructed about the sole evidence introduced to establish that the stealing had been made from the person. The judge explained then "why the offense was one of grand larceny, even though the value of the watch was less than $100." Neither this instruction nor the general ones which were given were erroneous.

■ As on so many other occasions, appellant picks out isolated phrases from the instructions to challenge their propriety. Instructions must be considered as a whole in order to determine their correctness or incorrectness. *People* v. *Díaz Alicea*, 91 P.R.R. 763 (1965); *People* v. *Martínez Díaz*, 90 P.R.R. 456 (1964); *People* v. *Barriera González*, 89 P.R.R. 756 (1964).

The judge charged the jury at length about the probative force of the witnesses' testimony. See, Tr. Ev. pp. 80 and 81.

■ As to the sworn statement given by witness Jorge Rivera Oyola and used by the defense to challenge it, although it is true that it did not go to the jury, from the transcript of the evidence it does not appear that it was offered in evidence, although it was marked for identification. In any event, the witness was cross-examined about alleged

contradictions and the jury heard his explanations.

We do not consider that it prejudiced appellant at all. Therefore, the sixth error was not committed.

■ The prosecuting attorney's two interventions, to which the seventh assignment of error refers, were not improper. When appellant was going to set up his defense, what he was actually doing was introducing a motion for peremptory acquittal. The prosecuting attorney's intervention was to clarify whether it was such a motion or the setting up of the defense.

The other intervention of the prosecuting attorney when the defense was seeking to impeach a witness for the prosecution, departing from the proper procedure, was also timely made.

In the eighth and last error the sufficiency of the evidence is attacked and the jury is charged with having acted motivated by passion and prejudice.

■ The jury had before it sufficient evidence to render the verdict of guilty.

The evidence for the prosecution tended to establish that at dawn, on October 28, 1967, Jorge Rivera Oyola, who had drunk liquor, was waiting for transportation in front of the municipal parking area of San Juan. The defendant was sitting at the opposite side. They began a conversation about a cast which defendant had on one arm and the latter told him that once his watch had been stolen. Rivera Oyola told defendant that he was waiting for the San José bus, and he fell asleep. When he woke up there was another person close to him, that is, between defendant and the witness. That other person said that the San José bus had already passed by. Rivera Oyola took a taxi that was going by. He noticed at that moment that his watch was missing and told the taxi driver to look for the nearest policeman. They found one at Fortaleza Street, corner of Tanca. At that moment defendant

and Zayas Laureano were coming up Tanca Street, as if they were a couple in love. Rivera Oyola pointed at them to the policeman as suspects, and the latter detained them for investigation. When the policeman told them that he was detaining them for investigation of the stealing of a watch, from between the two of them something fell to the ground. The policeman arrested them and requested the aid of another policeman who was at San Francisco Street. The policeman returned to the place of the arrest, and there he found the watch which the prejudiced party identified as the one which had been stolen from him.

Defendant, in his defense evidence, although he admits that he had been talking with the prejudiced party when the latter was waiting for the bus, denies that he had stolen the watch.

 Since the evidence believed by the jury is sufficient to support its verdict and the latter not being contrary to law, we will not disturb it. *People* v. *Piñeiro*, 77 P.R.R. 502 (1954).

For the reasons stated, the judgment appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández did not participate herein.